

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXRD
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable M. G. Speir, President
State Board of Barber Examiners
Austin, Texas

Dear Sir:

Opinion No. O-2620
Re: Interpretation of Article 734a,
V.A.P.C., regarding schools train-
ing applicants for "Class A" and
"Class B" barber licenses.

This will acknowledge receipt of your letter of August 9, 1940, upon the above stated matter, which reads in part as follows:

"In view of the fact that we are confronted with a situation which here-tofore has not presented itself with regard to schools, Principally Class B. Therefore we submit the following questions:

"1. What prerequisite requirements can be made before examination is given to applicant for Class A permit? Class B? What examination can be given Class B?

"2. What does Class B license entitle holder to do, and what restrict-ions can be made by Board?

"3. What minimum requirements can be made before granting license to school? On what grounds can license be revoked? Class A and Class B.

"4. Can license be granted to schools teaching Class B only? What re-quirements can be made and what courses must be taught?

"5. Can school license be granted to beauty schools? What requirements must be met, for Class A? Class B? Can a barber and beauty course be com-bined? If so, what requirements must be met with reference to a months and 1,000 hours provision.

"6. What requirements can be made of a person teaching in a school? Must such person hold a Class A or Class B license?

We shall endeavor to answer your questions in the order in which they are presented.

After carefully examining the provisions of Article 734a of the Penal Code, the Texas Barber Law, it is apparent that two classes of bar-ber licenses are contemplated: i.e., "Class A" and "Class B." "Class B"

licenses differ from "Class A" in that the former under Section 6 are granted only to those following the occupation of cutting hair, or practicing hair cutting in any beauty shop or hairdressing parlor; and Class B certificates authorize their holders to cut the hair only -- in such establishments.

In this connection we desire to call your attention to the apparent conflict between Section 3 and Section 6. Section 4 provides that operators in beauty shops or hairdressing parlors, although otherwise exempt under the Act, must if they desire to cut the hair for hire or reward in such establishments obtain a "Class B" certificate which will authorize the holder to do all of the things set forth in Section 4 under the definition of "barbering" except shaving and trimming the beard. Section 6, however, provides that a "Class B" certificate shall authorize the cutting of hair only in such establishments. We submit that this apparent conflict may be avoided. Section 4 defines barbering as follows:

". . . the practice of barbering is hereby defined to be the following practices for hire or reward when not done in the practice of medicine, surgery, osteopathy, or necessary treatments of healing the body by one authorized by law to do so;

"(a) Shaving or trimming the beard or cutting the hair.
"(b) By giving any of the following treatments by any person engaged in shaving or trimming the beard and/or cutting the hair:
"(1) Giving facial and scalp massages, or applications of oils, creams, lotions, or other preparations, either by hand or electrical appliances;
"(2) Singeing, shampooing, or dyeing the hair or applying hair tonics;
"(3) Applying cosmetic preparations, antiseptics, powders, oils, clays, or lotions to the scalp, face, neck, or that part of the body above the shoulders."

It is readily apparent that all of the operations described except shaving or trimming the beard and cutting the hair are operations commonly performed in beauty establishments, as well as barber shops. A beauty operator license holder therefore is already entitled under her beauty license to do all of the things set forth under the definition of barbering except the operations mentioned; i.e., shaving or trimming the beard or cutting the hair. It follows that Section 6 must control over Section 4 and a beauty operator holding "Class B" license is authorized under said license to perform only the practice of cutting hair. This conclusion is strengthened by looking to other provisions of the Act, among which is that in Section 6 providing that applicants for "Class B" licenses shall be examined by the Board only (1) as to their skill, ability and knowledge of properly performing the art or science of hair cutting, and (2) their knowledge of hygiene and sanitation pertaining thereto.

With this in mind, your first questions is: What prerequisite requirements can be made before examination is given to applicant for "Class

A" license? "Class B" ?  Section 6 of Article 734a provides that "applica-tions for such certificates styled 'Class B' must possess the qualifications required of others made amenable to the provisions of this act, and the ap-plication shall be made likewise and the same fees paid."   Sections 7 and 8 set forth the prerequisite qualifications for both "Class A" and "Class B" applicants.  These sections read as follows:

"Sec. 7.  Any person is qualified to receive a certificate of registration to practice barbering:

"(a) Who is qualified under the provisions of Section 8 of this Act.
"(b) Who is at least eighteen (18) years of age and who has practiced as an assistant barber under authority of a certificate issued by the Board of Barber Examiners, as such, for at least eighteen (18) months.
"(b) Who is of good moral character and temperate habits; and
"(d) Who has passed a satisfactory examination conducted by the Board to determine his fitness for practicing barbering.

"Provided, however, that an applicant for a certificate of registration to practice as a registered barber who fails to pass a satisfactory examina-tion conducted by the Board must continue to practice as an assistant barber for an additional six (6) months before he is again entitled to take the ex-amination as a registered barber.  (As amended Acts 1933, 43rd Leg., p. 802, ch. 235, § 1.)

"Sec. 8.  Any person is qualified to receive a certificate of registration as a registered assistant barber

"(a) Who is at least sixteen and one-half years of age; and
"(b) Who is of good moral character and temperate habits; and
"(c) Who has graduated from a school of barbering approved by the Board; and
"(d) Who has passed a satisfactory examination conducted by the Board to determine his fitness to practice as a registered assistant barber."

Under Sec. 10 the application is to be in such form and to contain such matters as may be required by the Board to determine whether or not the appli-cant possesses the qualifications prescribed in Sections 7 and 8 and other sections such as 21 and 24.  These sections read as follows:

"Sec. 21.  The Board shall either refuse to issue or to renew, or shall sus-pend or revoke any certificate  of registration for any one of, or a combina-tion of the following causes:

"(a) Conviction of a felony shown by a certificate copy of the record of the trial wherein the conviction was had;

"(b) Gross malpractice of gross incompetency;

"(c) Continued practice by a person knowingly having an infectious or contagious or communicable disease;

"(d) Advertising by means of knowingly making false or deceptive statements;

"(e) Advertising, practicing, or attempting to practice under another's trade name or another's name;

"(f) Habitual drunkeness or habitual addiction to the use of morphine, cocaine, or other habit forming drugs;

"(g) Immoral conduct; and

"(h) The commission of any of the offenses described in Section 24 of this Act.

"(i) No certificate shall be issued or renewed unless and until each applicant shall present a health certificate from a regular practicing medical doctor showing that the applicant is free from any kind of infectious or contagious diseases, tuberculosis, communicable diseases, free from the use of morphine, cocaine, or other habit-forming drug, or a habitual drunkard and that said applicant shall make affidavit to said medical examination that all of said facts are true."

"Sec. 24. That each of the following offenses shall constitute a misdemeanor punishable upon conviction in a court of competent jurisdiction by a fine of not less than twenty-five dollars ($25.00)nor more than two hundred dollars ($200.00);

"(a) The violation of any of the provisions of Sections 1, 2 and 3 of this Act;

"(b) permitting any person in one's employ, supervision, or control to practice as a barber or assistant barber unless that person has a certificate of registration as a registered assistant;

"(c) Obtaining or attempting to obtain a certificate of registration by fraudulent representation;

"(d) The wilfull failure to display a certificate of registration as required by Section 19 of this Act."

In answer to your first question, therefore, it is the opinion of this department, and you are respectfully advised, that applicants for license as either a "Class A" or "Class B" barber must meet all of the qualifications prescribed in sections 7 and 8 and be eligible under Sections 21 and 24 of the Texas Barber Law to take the examination.

We have previously answered your question as to what examination can be given applicants for "Class B" licenses. They may be examined by the Board only on two subjects:

(1) Their skill, ability and knowledge of properly performing the art or science of hair cutting, and

(2) Their knowledge of hygiene and sanitation pertaining thereto.

Your second question has also been answered. Under Sections 4 and 6 the holder of a "Class B" license is entitled only to cut hair under that license in a beauty parlor or a hairdressing establishment. The Board may, and it is its duty, to restrict the licensee accordingly.

You inquire next as to the minimum requirements that can be made by the Board before granting a license to operate a barber school, and the grounds upon which a licnese so granted may be revoked.

The only prerequisites to the issuance of a permit by the Board for the operation of a barber school are those set forth in Section 9 of Article 734a. That is to say, the school must (1) require as a prerequisite to graduation a course in instruction of not less than 1,000 hours to be completed within a period of not less than six months; (2) require as a prerequisite for the admission thereto, applicants to demonstrate their ability to read intelligently and write clearly the English language and (3) instruct students in such subjects as may be necessary and beneficial in the practice of barbering including the following subjects: scientific fundamentals of barbering; hygienic bacteriology; histology of the hair, skin, muscles and nerves; structure of the head, face and neck;elementary chemistry relating to sterilization and antiseptics; diseases of the skin and hair, massaging and manipulating muscles of the scalp, face, and neck; hair cutting, shaving (if teaching applicants for Class A license); and bleaching and dyeing the hair.

Article 734a of the Penal Code makes no provision for a distinction as to a "Class A" and "Class B" barber school. Any "school" must meet the requirements of Section 9 to obtain a permit. However, as provided in Section 9 'if such school does not care to teach persons who apply for 'Class A' but only 'Class B' certificates, shaving need not be taught."

We pass to your question as to the grounds for revoking of a barber school permit. Section 9 provides for the revocation of permits issued to barber schools in the following language:

> "In the event such school or college after a permit is issued to it violates any of the requirements of this law, either directly or indirectly, then said Board shall suspend or revoke the permit of any such school or college. . . ." (Underscoring ours)

As previously stated three requirements are made of a barber school in Section 9 of Article 734a. That is, the school must maintain a course of instruction prerequisite to graduation of not less than 1,000 hours to be completed within a period of not less than six months; it must require as a prerequisite to admission that applicants demonstrate their ability to read intelligently and write clearly the English language; and thirdly, the school must instruct its students in such subjects as may be necessary and beneficial in teaching the practice of barbering including the subjects specified in Section 9.

It is clear that a permit to operate a barber school may be revoked upon failure to maintain after the issuance of permit any of the requirements set out in Section 9. In Dendy v. Dartez (CCA) 108 S.W. (2d) 264, the court held that an additional ground for revocation of permit lies when the barber school fails to comply with Article 732 of the Penal Code or teaches its students practices inconsistent with such article.

In that case the specific holding was that the Board was authorized to cancel a permit to operate a barber school on the ground of "violation of the law" when the school taught its pupils to use towels upon customers that had previously been used on other customers and not in the meantime sterilized when there were no sterilized towels available.

Your fourth question is whether or not permit may be granted to schools teaching applicants for "Class B" licenses only and what requirements can be made and what courses can be taught. Section 9 specifically provides that barber schools may teach persons applying only for "Class B" certificates. It logically follows that the Board may grant permits to such schools. As before stated, the only distinction is that as to schools teaching such applicants, shaving need not be taught. In all other respects, Section 9 applies as to schools teaching applicants for either "Class A" or "Class B" license.

In answer to question No. 5, there are no prohibitions in Article 734a of Vernon's Annotated Penal Code to the granting of a barber school permit by the Board to a school operating as a beauty school; provided, the requirements of Section 9 or Article 734a are met. This applies to all such schools whether training applicants for only "Class B" or teaching applicants for "Class A" and "Class B" barber licenses. Such combined barber and beauty schools or colleges must maintain as a prerequisite to graduation (insofar as barbering is concerned) a course of instruction of not less than 1,000 hours, to be completed within a period of not lessthan six months. In addition, all of the required courses specified in Section 9 must be taught with the exception of shaving if the school proposes to teach applicants for "Class B" licenses only. T he fact that a school is licensed as a beauty school by the State Board of Hairdressers and Cosmetologists or is recognized as such by that Board will not prevent the school from also being licensed as a barber school, and the Barber Board must license such school if the requirements of Section 9 of the Act are met. The prerequisites to licensing of schools set forth in Section 9 are the Board's only criterion. It may not prescribe additional requirements by rule or regulation.

Your final question is as to the requirements that may be made of a person teaching in a barber school and whether or not such person may be required to hold a Class A or B license. Article 734a makes no provisions relative to the qualifications of persons teaching in barber schools, nor is the Board authorized to prescribe qualifications. However, Section 4 defines the practice of barbering as follows:

". . . the practice of barbering is hereby defined to be the following practices for hire or reward when not done in the practice of medicine, surgery, osteopathy, or necessary treatments of healing the body by one authorized by law to do so; etc." (See page 2 of this opinion for complete quotation of this provision of t he Act).

As to those teachers actually engaged in teaching or demonstrating any phase of the barber school curricula either upon students or upon customers of the school for hire or reward, which would fall within the above definition of "barbering," we believe a barber license must be obtained -- "Class A" if engaged in shaving as well as other incidents of barbering, and "Class B" if engaged in incidents of barbering other than shaving.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ James D. Smullen

James D. Smullen
Assistant

APPROVED AUG 31, 1940
/s/ GROVER SELLERS
FIRST ASSISTANT
ATTORNEY GENERAL

JDS:rw:egw

Approved
Opinion Committee
By B W B
Chairman